## PECOS & N. T. RY. CO. v. CREWS.

(Court of Civil Appeals of Texas. San Antonio. June 14, 1911. On Motion for Rehearing, July 1, 1911. Rehearing Denied Oct. 12, 1911.)

1. APPEAL AND ERROR (§ 681*)—RECORD.
It cannot be said there was error in overruling the exception to the amended petition that it claimed damages to cattle not mentioned in the original petition, and for which no damages were there claimed, the amended petition not showing such fact, and the original petition not appearing in the record, as the evidence introduced at the trial may not be looked to on that question.
[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 681.*]

2. PLEADING (§ 380*)—EVIDENCE ADMISSIBLE UNDER PLEADINGS—AMENDMENT OF PETITION.
The petition on which trial is had, and not one in lieu of which, by amendment, it stands, is determinative of whether evidence is admissible.
[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 380.*]

3. LIMITATION OF ACTIONS (§ 182*)—PLEADING STATUTE.
That the statute of limitations may be availed of, it must be pleaded.
[Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 182.*]

4. CARRIERS (§ 180*)—INTERSTATE COMMERCE —LIMITING LIABILITY OF INITIAL CARRIER.
The clause in a contract of interstate shipment, limiting the liability of the initial carrier to its own lines of railway, contravenes Act Cong. June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1909, p. 1167).
[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 180.*]

5. CARRIERS (§ 218*)—CONTRACT OF SHIPMENT —PROVISION AS TO NOTICE OF DAMAGES.
The clause in a contract of shipment, requiring the shipper to give notice to the carrier of any claim of damages within 91 days after the claim accrues, not only does not apply to damages accruing before execution of the contract, through delay in furnishing cars, but is not binding as to subsequent damages, if the shipper was not given opportunity to ascertain that it was embodied in the writing, and knew nothing of it prior to his stock being loaded and started en route.
[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 218.*]

On Motion for Rehearing.

6. APPEAL AND ERROR (§ 1053*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.
The court, in an action for damages to a shipment of cattle, having expressly excluded from the jury any damage that may have ac-

crued after their delivery at destination, any error in admission of evidence as to their condition after being subsequently taken to another place was harmless.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053.*]

7. CARRIERS (§ 229*)—DELAY IN TRANSPORTATION—DAMAGES.
It being proved, in an action for delay in transporting cattle, that there was no market of the cattle at their destination, and there being evidence of their real or intrinsic value there, the jury are properly charged to find as damages the difference between their intrinsic value when, but for the carrier's negligence, they would have arrived there, and such value when they were actually delivered.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by T. L. Crews against the Pecos & Northern Texas Railway Company. Judgment for plaintiff. Defendant appeals. Affirmed.

Terry, Cavin & Mills, Madden, Trulove & Kimbrough, and Carl Gilliland, for appellant. Knight & Slaton, for appellee.

NEILL, J. This suit was brought by appellee against appellant to recover damages on account of its failure to furnish cars at the time and place ordered to transport his cattle, and on account of delay and rough handling en route..

In his second amended original petition, upon which the case was tried, appellee alleged that on April 16, 1907, he was in possession of 200 cows, 90 yearlings, and about 100 calves; that on said date he requested of appellant's agent, at Hereford, Tex., ten cars, to be furnished on April 25, 1907, in which to ship said cattle from Hereford, Tex., to pasture at Cedar Point and Elmdale, in the state of Kansas; that he brought the cattle near to Hereford on said date, but the cars were not furnished on that date, nor until June 10, 1907; that said cattle reached Cedar Point and Elmdale, Kan., on June 12, 1907, after having been on the road from Hereford for about 45 hours, when 24 hours would have been a reasonable time for their transportation; that in holding the cattle at Hereford, awaiting cars, for the period of 45 days appellee incurred the expense of the labor of three men with their horses, to hold and care for them, which was $4 each per day; that the cattle were unnecessarily unloaded and fed at Wellington, Kan., at an expense to appellee of $30; that one of the cows was killed en route by the negligent handling of appellant's train, which cow was of the reasonable value of $25; that upon arriving at destination his cows weighed 100 pounds less per head, and the yearlings 75 pounds less per head, than if they had been transported on April 25, 1907, the date for which the cars were ordered,

and that therefore his cows were worth $7.50 less per head, the yearlings $5 less per head, and the calves $3 less per head; that said cattle were subsequently shipped to Kansas City, and that by reason of their reaching late grass in the Kansas pastures they had to be sold on the market at Kansas City 45 days later than they would have been if they had been shipped from Hereford on April 25, 1907, and that during said 45 days the market value on the cows, yearlings, and calves at Kansas City declined 50 cents per hundred pounds; that therefore, by reason of such decline, the cows sold for $10, the yearlings $7, and the calves $4, less per head than they would have sold for if they had reached Cedar Point and Elmdale by April 27th or May 1st, and had been in a condition to have sold on the Kansas City market 45 days earlier than they were sold; that by reason of all the facts before stated appellee was damaged in the sum of $3,000.

Appellee answered by a plea to the jurisdiction, general demurrer, a number of special exceptions, general denial, and pleaded specially (1) that the damages claimed by plaintiff for failure to get his cattle to Kansas grass in proper time are special damages, and were not reasonably in the contemplation of defendant at the time the cars were ordered, and no notice was given to defendant or to its agent of such special damages; (2) that the damages contemplated on account of loss of market value, etc., at Kansas City is a new and distinct action from that set up in plaintiff's original petition, and the same is barred by the statute of limitation; (3) plaintiff himself was negligent in shipping his cattle to Kansas pastures at a time when such pastures were not suited for grazing and fattening cattle; (4) that defendant was at said time reconstructing its line of railway to meet the requirements of a rapidly developing country; that there was an unprecedented rush of business and an unusual demand for transportation facilities; that the demands for motive power, cars, etc., throughout the country were so great that it was not only impracticable, but impossible, for defendant to have provided, at the time said cars were demanded by appellee, such cars and motive power for transportation of the cattle; (5) that appellee's cattle were transported over and by virtue of a certain written contract providing, among other things, that the liability of appellant should extend only to its own line, and that it would not be liable for any loss occurring off its line of railway; also that no claim of damage to said cattle should be recovered, unless written claim therefor should be presented to appellant within 91 days after such damages had accrued; that said stipulations are reasonable and valid; that no claim was in fact presented in such manner by appellee within said period of 91 days, and this plea of appellant was supported by affidavit.

Trial was had before a jury, and a verdict returned in favor of appellee against appellant for the sum of $2,300, and judgment rendered in accordance therewith.

Conclusions.

[1] (1) The first assignment of error complains of the court's overruling a special exception to plaintiff's second amended original petition, which was to the effect that it claimed damages to a number of cattle not mentioned in his original petition, nor for which any damages were claimed therein. The record does not include a copy of the original petition, and, as the second amended original does not show that any other or different cattle were described therein than those mentioned in the original petition, the assignment must be overruled. It is a principle, to which there can be no exception, that in determining the sufficiency of pleadings as against an exception their faces alone must be looked at, and that no coloring will be given them, nor aid lent the exceptions by the evidence introduced upon the trial of the case.

[2] (2) Likewise, in determining whether evidence is admissible to prove the allegations in a petition upon which a case is being tried, that pleading, and not one it stands in lieu of by amendment, must be looked to, and, if the evidence offered tends to support its allegations, and is otherwise unobjectionable, its admission cannot be complained of, because it would not have been admissible for the lack of a proper allegation under the original petition, which the amended one, filed in lieu of it, contains.

[3] (3) The defendant, not having pleaded the statute of limitation to that part of plaintiff's petition which seeks to recover damages for the injuries caused his calves, could not be heard to complain that the introduction of competent evidence to prove such damages was improperly admitted, upon the ground that plaintiff's suit therefor was barred by limitation. The statute of limitations, unless pleaded, like the prayers of the wicked, availeth not. But was the evidence complained of under the third assignment otherwise competent to prove such damages? The evidence referred to was of plaintiff's witness, John M. Martin, who, while testifying as to the market values of cattle such as plaintiff's in Kansas City at different times during the period extending from July 1, to and including October, 1907, testified that "calves from eight to ten weeks old, and weighing 140 to 160 pounds, sell to the best advantage as veals. Mr. Crews' calves were not the right age, nor the right weight. They were all too old and too heavy to bring the best price as veals. These calves weighed 205 pounds, and were in good shape, but were entirely too heavy as veals. I should judge these calves were two to three months old, and calves from eight to ten weeks old sell to the best advantage as veal." It must

be remembered that the shipment of the cattle was from Hereford, Tex., to Cedar Point and Elmdale, Kan, for pasturage. It is neither alleged nor shown that defendant was informed or knew, either when the cattle were tendered it for shipment or when they were actually shipped, that plaintiff's ultimate intention was to ship them from said places of pasturage to Kansas City, to be sold there on the market during the late summer or early fall of that year; nor were the cattle of such kind as, of and in itself, to impart such notice, if it should be conceded that notice of such an intention may be given or must be taken from the kind of animals turned over to a carrier for transportation to places of pasturage, instead of to a point of an established and permanent market for such animals. Hence the measure of damages in this case was the difference in the market value of the cattle at Cedar Point and Elmdale at the time and condition they should have arrived there, but for defendant's delay in shipping and negligence in handling them, and their market value at the time and in the condition they were when they were actually delivered by defendant to plaintiff at said points. This difference in market value at such times and places was all the defendant was liable for, and the market value of the animals at any time in Kansas City was wholly foreign and irrelevant to the issue of the amount of damages recoverable from defendant. Hence the court erred in admitting the testimony complained of by the third assignment.

(4) The refusal of the court to instruct the jury, at defendant's request, not to consider any damages to the 100 head of calves described in plaintiff's second amended petition was not error manifested by the record before us. Were it apparent from the record that plaintiff never sued for any damages to the calves until he filed his second amended original petition, and the limitation had been pleaded to such part of plaintiff's action, a different question would be presented, and to which appellant's proposition under the assignment would be applicable.

(5) The fifth assignment complains of the court's admitting, over defendant's objections, the testimony of plaintiff T. L. Crews as to what the cattle were worth at Elmdale and Cedar Point, had they been shipped from Hereford on April 25th, and as to what was the difference in their value at the time they did arrive at said places in June, and what their value would have been, had they arrived there the 1st of May; such testimony having no reference to the market value of the cattle at such places and times. In an action by a shipper against a common carrier for damages to cattle occasioned by delay or injury in shipment, the measure of the damages is the difference in the market values at destination before and after the delay or injury occurred. G., C. & S. F. Ry. v. Stanley,

89 Tex. 42, 33 S. W. 109; T. & P. Ry. v. Meeks, 74 S. W. 329; T. & P. Ry. v. Crowley, 86 S. W. 342; M., K. & T. Ry. v. Allen, 39 Tex. Civ. App. 236, 87 S. W. 168; M., K. & T. Ry. v. Kyser, 38 Tex. Civ. App. 355, 87 S. W. 389; Pecos & N. T. Ry. v. Hughes, 44 Tex. Civ. App. 135, 98 S. W. 410. Unless it were shown there was no market value for the cattle at destination, the rule stated should have been observed in admitting evidence upon the issue of damages.

The portion of the charge complained of by the seventh assignment is erroneous, in that it instructs the jury in determining the damages to consider the intrinsic value of the cattle, when it had not been proved that there was no market value for the cattle at the places of destination. G., C. & S. F. Ry. v. Gillespie, 118 S. W. 628; T. & P. Ry. v. Shipman, 98 S. W. 449; G., H. & S. F. Ry. Co. v. Karrer, 109 S. W. 440.

[4] There was no error in the court's refusing to admit in evidence that clause in the contract of shipment which limited defendant's liability to its own lines of railway, because such clause was in derogation of the act of Congress of June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1907, p. 909; Supp. 1909, p. 1167). G., H. & S. A. Ry. v. Piper Co., 52 Tex. Civ. App. 568, 115 S. W. 107; G. H. & S. A. Ry. v. Wallace, 117 S. W. 169; M., K. & T. Ry. v. Harriman, 128 S. W. 935; St. Louis, etc., Ry. v. Roff, etc., Co., 128 S. W. 1194; Carlton Produce Co. v. Velasco, B. & N. Ry. Co., 131 S. W. 1187. Inasmuch as the appellant, it being the initial carrier, was liable under the act cited for injuries caused the cattle by its connecting carriers, evidence of injuries done them by such carriers was admissible to prove the extent of such liability.

[5] The court properly submitted the question to the jury as to whether, under the evidence, the oral or written contract should govern in determining the defendant's liability; and instructed them correctly that in no event would the clause in the written contract, requiring the plaintiff to give notice to defendant within 91 days after his claim for damages accrued, apply to any part of the damages which may have accrued prior to the date of execution of said contract. The clause just referred to in the written contract is the only thing that differentiates it in effect from the oral agreement. And if the plaintiff was not given an opportunity to ascertain that it was embodied in the writing, and knew nothing of it before his cattle were loaded and had started en route to their destination, he was not bound by such provision.

On account of the errors indicated, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

In the motion for rehearing, our attention has been called to several mistakes in our statement of the record in the original opin-

ion, the correction of which requires us to grant the motion and affirm the judgment of the district court.

One of the mistakes occurs in what was said in considering the third assignment of error, and consists in the statement that "It is neither alleged nor shown that defendant was informed or knew, either when the cattle were tendered it for shipment or when they were actually shipped, that plaintiff's ultimate intention was to ship them from places of pasturage to Kansas City. Another is in our assumption that it was not shown that there was no market value of the cattle at Cedar Point and Elmdale at the time the cattle should have arrived there, had it not been for the defendant's delay in shipping, and at the time they were actually delivered there.

[6] Inasmuch as the court expressly excluded from the jury any damage that may have accrued after the cattle were delivered at Elmdale and Cedar Point, the first mistake indicated is primarily immaterial in everything save the admission of the evidence as to the condition of the cattle when they arrived in Kansas, after being shipped there, and in view of that part of the court's charge it becomes immaterial whether such testimony was properly admitted or not, for it could not possibly affect the verdict.

[7] Inasmuch as it was proved that there was no market value of the cattle at the points to which they were shipped, and there was evidence showing their real or intrinsic value there, there was no error in the court's charging the jury to find as damages the difference between the intrinsic value of the cattle at the time they would have been carried to said points of destination, had it not been for the negligence of the defendant, and their intrinsic value at the time they were actually delivered there.

There is evidence reasonably sufficient to support the verdict on every issue submitted, and there is no error in the charge which can be justly complained of by appellant.

Therefore the motion is granted, and the judgment of the district court is affirmed.